**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**DEIDRA Y. C.-C.,**

**Plaintiff,**

**vs.** **CIV NO. 1:25-cv-00908-KRS**

**FRANK BISIGNANO,**
**Commissioner of Social Security Administration,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on the Social Security Administrative Record, (Doc. 9), filed November 9, 2025, in support of Plaintiff Deidra C.-C.'s ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Frank Bisignano, the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying Plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act. On January 26, 2026, Plaintiff filed her Opening Brief (the "Motion") wherein she requests the Court reverse and remand the Commissioner's unfavorable decision. (Doc. 12). The Commissioner filed a Brief in Response on April 20, 2026, (Doc. 18), and Plaintiff filed a Reply on June 1, 2026. (Doc. 21). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge did not err in his decision and will therefore **DENY** Plaintiff's Motion and **AFFIRM** the judgment of the Commissioner.

## I. BACKGROUND AND PROCEDURAL POSTURE

On February 1, 2022, Plaintiff proactively filed an application Plaintiff filed an SSI alleging an onset date of August 1, 2021, at 41 years of age. (*See* Administrative Record ("AR") at 14, 24, 62-63).[1] Plaintiff alleged she was disabled due to herniated disk, post-traumatic stress disorder ("PTSD"), panic disorder, insomnia, and compression fracture (T-11). (AR at 63). At the initial level, Plaintiff added she was also disabled due to compression deformity of vertebra. (AR at 64.) Plaintiff's application was denied at the initial level on December 14, 2022, (AR at 63-72, 93-102), and upon reconsideration on February 5, 2024, (AR at 74-83, 106-113).[2] Plaintiff requested a hearing on February 12, 2024, (AR at 14, 116), which Administrative Law Judge Holly Hansen ("ALJ Hansen" or "the ALJ") conducted telephonically on September 26, 2024, (AR at 14). Plaintiff was represented by an attorney and testified at the hearing, (AR at 14, 32-56), as did vocational expert Thomas A. Greiner ("VE"), (AR at 14, 32, 56-61). Plaintiff also submitted or informed ALJ Hansen of additional written evidence less than five (5) business days prior to the telephonic hearing. (AR at 14); *see also* 20 C.F.R. § 416.1435(a)). The ALJ admitted the evidence into the record pursuant to 20 C.F.R. § 416.1435(b). (AR at 14.)

October 29, 2024, ALJ Hansen issued an unfavorable decision. (AR at 11-31.) Plaintiff sought review from the Appeals Council, (AR at 195-96), which denied review on July 22, 2025, (AR at 1-5), thus making the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On September 19, 2025, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision. (Doc. 1); (*see also* AR at 1-2).

---

1 Document 9 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

2 The Court notes that on April 16, 2022, Plaintiff was notified that she was not eligible for disability benefits because she had not worked long enough under Social Security to earn credits. (AR at 89-91.)

## II. STANDARD OF REVIEW

The Social Security Act (the "Act") provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). The threshold for substantial evidence is not high, it only requires "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U. S. 197, 229 (1938); citing *Perales*, 402 U. S. 389, 401 (1971). Put simply, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek*, 587 U.S. at 103. On the other hand, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 587 U.S. at 118 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## III. THE ALJ'S DETERMINATION

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that she is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, ALJ Hansen found the Plaintiff had "not engaged in substantial gainful activity since February 1, 2022, the application date . . . ." (AR at 17 (citing 20 C.F.R. § 416.416.971 *et seq*).)

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. Here, the ALJ concluded that Plaintiff suffered from the "following severe impairments: degenerative disc disease of the thoracic spine and thoracic fracture with compression deformity, lumbar and cervical degenerative disc disease, and [PTSD]." (AR at 17 (citing (20 C.F.R. § 416.920(c).) The ALJ did not find any non-severe impairments. (AR at 17.) ALJ Hansen also found that Plaintiff's carpal tunnel was not a medically determinable impairment. (AR at 17.)

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). Here, ALJ Hansen concluded that Plaintiff's physical and

mental impairments—singularly or in combination thereof—did not meet or equal in severity any of the listings described in the governing regulations, 20 C.F.R. § Part 404, Subpart P, Appendix 1. (AR at 17 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926)). The ALJ specifically noted Listings under Sections 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the causa equina), and 12.15 (trauma- and stress-related disorders). (AR at 17-19.)

At step four, the claimant must show that her impairment or combination of impairments prevent her from performing work she has performed in the past. The ALJ first determines the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e); *see also Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023. Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ considered "the entire record" and found Plaintiff had the RFC:

> perform sedentary work as defined in 20 [C.F.R. §] 416.967(a) except the [Plaintiff] can occasionally balance, kneel, stoop, crouch, and crawl but never climb. She can frequently handle and finger bilaterally. The claimant can occasionally reach overhead bilaterally. She must never be exposed to unprotected heights or dangerous machinery. The [Plaintiff] can remember, understand, and carryout detailed but not complex instructions, and adapt to occasional changes in a routine work setting.

(AR at 20.) In explaining the RFC determination, the ALJ noted subjective statements in the record, objective medical evidence, and the Commissioner's administrative findings on initial review and reconsideration.

ALJ Hansen determined Plaintiff had no past relevant work, but based on Plaintiff's age

(41), work experience, education (at least high school),[3] and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy. (AR at 24-25 (citing 20 C.F.R. §§ 416.965, 416.963, 416.964, 416.968, 416.969, 416.969(a)).) The VE testified that Plaintiff would be able to perform the requirements of representative occupations as: "(1) document preparer, Dictionary of Occupational Titles ("DOT") code 249.587-018, sedentary exertion, unskilled work, Specific Vocational Preparation ("SVP") level 2, with 14,000 jobs in the national economy; and (2) surveillance system monitor, DOT code 379.367-010, sedentary exertion, unskilled work, SVP 2, with 3,100 jobs in the national economy." (AR at 24-25.) ALJ Hansen thus concluded Plaintiff was not disabled at any time from since February 1, 2022, the date she filed her SSI application. (AR at 25.)

## IV. DISCUSSION

Plaintiff asserts ALJ Hansen committed both legal and factual errors because she purportedly failed to: (1) develop the record based on new evidence that should have been presented to a medical examiner (doc. 12 at 8-13); and (2) properly weigh the opinion of consultative examiner Christopher Gaudiot, M.D. ("Dr. Gaudiot"), (doc. 12 at 13-19). The Commissioner, in response, asserts that substantial evidence supports the ALJ's RFC finding and, as a result, the ALJ was not required to further develop the record via a medical expert. (Doc. 18 at 8-11). Further, the ALJ reasonably evaluated the opinion Dr. Gaudiot. (Doc. 18 at 11-13). For the reasons explained below, the Court agrees with Defendant.

### A. The ALJ Did Not Have a Duty to Further Develop the Record

Plaintiff first argues that the ALJ's disability determination is not supported by substantial

3 Plaintiff has a general educational development degree. (AR at 65.)

evidence because ALJ Hansen was required to submit objective medical evidence that was obtained after the reconsideration level to a medical expert prior to rendering her decision. (Doc. 12 at 8-13.) Plaintiff contends that a reasonable medical examiner could have concluded that Plaintiff's impairments further restricted "the amount of weight she could lift and carry [and] how much she could use her hands" than what the RFC permitted. (Doc. 12 at 8-9.) Plaintiff directs the Court to her medical records from May 2024 to August 2024, which showed "decreased range of motion in the neck, impaired sensation, slightly decreased reflexes in the upper extremities, reduced strength with finger flexion in the right hand, positive facet loading maneuvers, and tenderness to palpation over the muscles of the neck and shoulders" and required two months of physical therapy. (Doc. 12 at 9 (citing AR 590-91, 530-31, 544-45.).) Plaintiff's August 2024 MRI also evidenced "mild to moderate disc" bulge between her C4 and C7, (*id.* at 9 (citing AR at 610)), and "foraminal narrowing at T8 and T9" that progressed from "mild to moderate" to "moderate to severe" over the course of three years, (*id.* at 9 (citing AR at 452)). Plaintiff also saw an orthopedic nurse who recommended hand and shoulder consultations. (*Id.* at 9-10 (citing AR at 385, 619).) Plaintiff claims the aforementioned medical records were "too complicated for the orthopedic nurse practitioner, it must surely be too complicated for the ALJ" in determining Plaintiff's limitations and/or disability. (Doc. 12 at 11.)

In support of her argument, Plaintiff relies on *Hendron v. Colvin*, 767 F.3d 951 (10th Cir. 2014) and *Puente v. Bisignano*, No. 2:25-CV-0331-DLM, 2025 U.S. Dist. LEXIS 163176 (D.N.M. Aug. 21, 2025). (Doc. 12 at 11-13.) In *Hendron*, the district court reversed and remanded on several grounds including that the ALJ failed to establish "a sufficient record to base a disability decision." *Hendron*, 767 F.3d at 953-54. The district court noted that, on remand, the ALJ could "call a

medical expert to testify at a new hearing." *Id.* at 954. The Tenth Circuit held that the lower court erred in reversing because the ALJ's RFC was supported by substantial evidence. *Id.* at 954-55. Consequently, the ALJ was not required to further develop the record. *Id.* The Tenth Circuit reasoned that "[t]he ALJ considered all of the newly submitted medical records," and the ALJ would not benefit from a medical expert because the medical records were not complex. *Id.* at 957.

In *Puente*, the plaintiff relied on *Hendron* to argue that remand may be required if the ALJ failed to submit new objective medical evidence to a medical expert for review to determine the plaintiff's medical condition. *Puente*, 2025 U.S. Dist. LEXIS 163176 at *10 n.4. The plaintiff conceded that her position was based on "how the ALJ interpreted the medical evidence that was available at the hearing." *Id.* (internal citation omitted). United States Magistrate Judge Damian L. Martinez declined to find that *Hendron* required remand under the circumstances presented in that case. *Id.* Magistrate Judge Martinez concluded that an ALJ is entitled to rely on the claimant's counsel to structure and present the case adequately during the disability determination process because the claimant bears the burden to prove disability and furnish evidence. *Id.* at *10-11.

The Court is not persuaded that *Hendron* or *Puente*, either singularly or combined, require remand under the circumstances in this matter. The ALJ has a "basic obligation" in every social security case to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)). The ALJ's duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v.*

*Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

Here ALJ Hansen concluded Plaintiff had a RFC to perform sedentary work (the least strenuous type of work) as defined in 20 C.F.R. § 416.967,[4] with postural limitations restricting her to only occasionally kneeling, balancing, stooping, crouching, and crawling, but never climbing; finger bilaterally but no more than frequently; and "occasionally reach overhead bilaterally." (AR at 20.) In formulating the RFC, ALJ Hansen summarized Plaintiff's testimony related to her physical limitations. (AR at 20-21 (citing "Hearing Testimony").) Plaintiff testified that she suffered from persistent pain despite pain medication management, physical therapy, and steroid injections. (AR at 20-21.) She also stated that she was bedridden for multiple days when the pain was at its worst. (AR at 21.) Plaintiff further testified she may use a cane intermittently around her home. (AR at 21.) Despite these claims, Plaintiff testified she could stand for "up to 10 minutes and 'a couple of hours' in total during the day." (AR at 21.) She could also sit for "a total of four hours[,]" but would need to lay down afterwards. (AR at 21.)

ALJ Hansen's decision further addressed in detail the objective medical evidence. (*See* AR at 18-24.) In particular, ALJ Hansen noted that the record demonstrated "mild compression deformity" of the lumbar and thoracic spine and "thoracic stenosis and disc bulging at the thoracic spine . . . along with compression fractures at the T11 through T12 and neural foraminal narrowing

4 The regulations "classify jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 416.967. Sedentary work is the least strenuous work that,

> involves *lifting no more than 10 pounds* at a time and *occasionally lifting or carrying* articles like *docket files, ledgers, and small tools*. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a) (emphasis added).

at the T8 through T9." (AR at 18 (citing AR at 365, 453, 455).) She also detailed Plaintiff's subjective symptoms related to her physical impairments and the correlating medical evidence from July 2021 through August 20, 2024. (AR at 21-23 (citing AR at 363, 365, 385-92, 396, 400-01, 403, 416, 418, 424, 461, 448-500 (generally)).) This discussion included references to Plaintiff's complaints "of severe neck pain that transferred through the upper extremities causing pain and numbness." (AR at 21 (citing AR at 481).) In August 2024, Plaintiff's radiographs of her "cervical spine confirmed mild to moderate disc bulging and osteophyte complex at the C5 through C7 levels." (AR at 21-22 (citing AR at 616).)

Although the record demonstrated Plaintiff suffered from severe musculoskeletal impairments, ALJ Hansen found Plaintiff's physical examinations typically showed Plaintiff exhibited normal coordination and balance without an assistive device and her gait was often "non-antalgic." (AR at 18 (citing AR at 386, 483, 614), 22 (citing AR at 386, 455).) Plaintiff was prescribed "various pain medications" and physical therapy to manage "her musculoskeletal pain symptoms[,]" which included physical therapy for cervicalgia and right-sided should pain. (AR at 22 (citing AR at 410-40, 601).) Plaintiff reported improvement with physical therapy, pain medication management, and medial branch nerve injections in the spine. (AR at 18 (citing AR at 461 ("patient is feeling better. . . She is walking for longer periods of time and up to 1 hour before she feels low back fatigue."), 22 (citing AR at 501-12).) The ALJ also assessed that Plaintiff reported in her function report, and to medical providers, that she completed daily activities such as preparing simple meals, driving solo to the store, managing her finances without difficulty, bowling with her family, attending church events and concerts, working part time as a DoorDash driver, and shopping online despite her physical limitations. (AR at 18 (citing AR at 454, 583), 19

(citing AR at 254-61), 22 (citing AR at 386, 445, 483, 614).)

ALJ Hansen also relied on the findings of state agency medical consultants at the initial and reconsideration level. (AR at 23 (citing AR at 63-72, 74-83).) Both consultants opined Plaintiff "could perform work activities at the light exertional level with some postural restrictions." (AR at 23 (citing AR at 63-72, 74-83).) ALJ Hansen found their opinions to be "partially persuasive to the extent that they are consistent with and supported by the objective evidence." (AR at 23.) However, ALJ Hansen found Plaintiff's physical impairments were more limited than the consultants opined based on Plaintiff's pain, numbness, and reduced strength. (AR at 23-24.)

Based on her consideration of the above evidence, ALJ Hansen found Plaintiff's physical impairments warranted an RFC restricting her to sedentary work with additional limitations related to "occasionally" balancing, stooping, crouching, kneeling, and crawling. (AR at 20, 24.) She also limited Plaintiff to "frequently handle and finger bilaterally," and "occasionally reach overhead bilaterally." (AR at 24.) Ultimately, ALJ Hansen's decision shows that she considered the medical evidence related to Plaintiff's physical impairments, including Plaintiff's 2024 medical records, and her RFC determination limiting Plaintiff to a sedentary work—the least strenuous work. *See* 20 C.F.R. § 416.967. Moreover, Plaintiff testified that her doctor limited her to lifting no more than 10 pounds. (Doc. 12 at 9.) ALJ Hansen's limitation to sedentary work complies with Plaintiff's unsubstantiated weight restriction claim. *See* 20 C.F.R. § 416.967(a) (sedentary work involves *lifting no more than 10 pounds* at a time and *occasionally lifting or carrying* articles like *docket files, ledgers, and small tools*.") (emphasis added).

The Court further agrees with the Commissioner that the 2024 medical evidence Plaintiff cites does not overwhelm the evidence ALJ Hansen relied upon in assessing the disability

determination. Plaintiff surmises that the records could further restrict "the amount of weight she could lift and carry [and] how much she could use her hands" than what the RFC permitted. (Doc. 12 at 8-9.) In this regard, Plaintiff conclusory states that Plaintiff's 2024 medical records are too complex for the ALJ to interpret. Indeed, Plaintiff cites to none and the Court cannot find any authority delineating the permissible scope of an ALJ's independent medical record review. Courts in other districts have frowned upon an ALJ independently interpreting "raw medical data" such as complex imaging and laboratory testing results, and found harmful error where such records are generated following a worsening of an existing injury. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 U.S. Dist. LEXIS 564, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . .").

Similarly, the Tenth Circuit has held that an ALJ may elicit a medical expert in complex cases to explain medical terms and problems to a lay ALJ. *Forcum v. Chater*, No. 94-5221, 1995 U.S. App. LEXIS 29815, at *6 (10th Cir. Oct. 20, 1995) (citing *Perales*, 402 U.S. at 408). In this matter, however, the medical records Plaintiff relies upon are not complex raw data. Plaintiff's August 20, 2024, medical records does include imaging and testing results. (AR at 616-19.) But the records also include detailed summaries of the medical provider's objective observations, prior and new medical history, physical examinations, and Plaintiff's treatment plan regarding her upper

extremities and hands. (AR at 612-20.) Plaintiff offers no authority to show that ALJ Hansen erroneously considered these medical summaries and treatment plans. Ultimately, ALJ Hansen's decision shows that she considered the medical evidence related to Plaintiff's physical impairments and her RFC determination limiting Plaintiff to sedentary work with some additional limitations is supported by substantial evidence. Even if the evidence could support a different finding, the Court cannot displace the agency's choice between two fairly conflicting views. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

Additionally, as Magistrate Judge Martinez found in *Puente*, Plaintiff was represented by counsel in the administrative proceedings, and counsel could have but did not assert that the record was insufficiently developed before or at the administrative hearing in this matter. (AR at 35); *see also Hendron*, 767 F.3d at 957. The claimant and her counsel "are in the best position to have knowledge of any additional medical records that may be relevant to her disability claim." *Hendron*, 767 F.3d at 957. "The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citation omitted). Although the ALJ bears responsibility for ensuring that an adequate record is developed, when the claimant is represented by counsel, "'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.'" *Id.* (quoting *Hawkins*, 113 F.3d at 1167). The Court therefore finds that ALJ Hansen did not err by not seeking a medical expert opinion on Plaintiff's post-reconsideration medical records.

**B. The ALJ Did Not Err in Finding Dr. Gaudiot's Opinion Partially Persuasive**

Turning to the second alleged deficiency, Plaintiff argues ALJ Hansen erroneously found Dr. Gaudiot's report lacked supportability and was not consistent with the record. In support of her contention, Plaintiff argues ALJ Hansen: (1) misconstrued Plaintiff's mini-mental status examination ("MMSE") results by stating the results showed Plaintiff "has the capacity to persist in the performance of tasks despite her mental impairment" when the results are actually limited to whether Plaintiff has a neurocognitive impairment, (doc. 12 at 15-16); (2) discounted Dr. Gaudiot's opinion for lack of clinical tests and findings even though the MMSE is an accepted clinical test and his findings were further supported by his recitation of Plaintif's trauma and symptom history, (doc. 12 at 16-17); (3) "cherry-picked" daily activities to support her finding that Dr. Gaudiot's findings were inconsistent, (doc. 12 at 17-18).[5]

Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ was required to evaluate Dr. Gaudiot's medical opinions under the revised regulation found in 20 C.F.R. § 404.1520c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533 at *4 & n.8 (10th Cir. July 6, 2021). Under 20 CFR § 404.1520c, the persuasiveness of a medical source's opinions depends on five factors: "supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu*, 2021 WL 2794533, at *5 (10th Cir. 2021) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)).

5 In her Motion, Plaintiff also argues that "[o]n remand" the ALJ should strongly consider Plaintiff's testimony that she did not have PTSD, but also testified that she could not let her mental impairments "slow [her] down" as a single mother. (Doc. 12 at 18-19.) Plaintiff contends such testimony could undermine her own allegations of mental health limitations and Dr. Gaudiot's report. (*Id.* at 18.) She then states that this Court may not reweigh his fact. (*Id.*) It is unclear why, at all, Plaintiff addresses this issue in her Motion when she simultaneously acknowledges that it is not an issue before the Court.

Supportability and consistency are the only two factors that the ALJ must explain when assessing the persuasiveness of a medical source's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Zhu*, 2021 WL 2794533, at *5 (internal brackets and ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(1)). Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Id.* (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).

Dr. Gaudiot conducted a consultative psychological examination of Plaintiff in November 2022.[6] (AR at 441-47.) Plaintiff did not present with significant abnormalities—Plaintiff had good grooming, hygiene, and fair eye contact; she was cooperative, calm, had appropriate mannerisms, and was not agitated; her speech was spontaneous with a normal rate, rhythm, and tone; her affect was "[c]ongruent, normal range," fully oriented, and maintained adequate attention and concentration. (AR at 441.) Dr. Gaudiot found Plaintiff to be "a mostly reliable historian." (AR at 445.) With respect to language and mood, Dr. Gaudiot found Plaintiff's comprehension mostly intact; mostly able to express needs, wants, and concerns; and her mood was "pretty good." (AR at 444.) On the MMSE, Plaintiff scored: orientation 10/10, registration 3/3, attention and calculation: 5/5, recall: 2/3, and language and praxis: 8/8. (AR at 445.) Dr. Gaudiot concluded that

6 Dr. Gaudiot issued a repoint on December 2, 2022. (AR at 441-47.)

Plaintiff's score of 28 out of 29 suggested "no neurocognitive impairment." (AR at 445.)

Following the evaluation, Dr. Gaudiot diagnosed Plaintiff with PTSD with a "fair-poor" prognosis based on her "frequency and severity of symptomatic presentation." (AR at 446.) Dr. Gaudiot recommended individual therapy and anti-depressant and anti-anxiety medications. (AR at 446.) He opined that Plaintiff,

> is likely to experience impairment in the ability to understand and carry out complex instructions, as well as concentrate, related to their current symptoms. Additionally, the claimant is likely to have difficulty persisting at tasks and being a dependable employee given the degree of depression, fear, and anxiety. The claimant would likely require some supervision at any type of work-related activity given their history.

(AR at 446.) Accordingly, Dr. Gaudiot found Plaintiff had the following limitations:

- moderate limitation for understanding and remembering complex instructions;
- moderate limitation in her ability to complete instructions (continued concentration and task completion);
- mild-moderate limitation in her ability to concentrate (continued concentration and task completion);
- moderate-severe limitation in her ability to persist at tasks (continued concentration and task completion);
- moderate-severe ability to adapt to changes at work;
- mild-moderate limitation in ability to use public transportation; and
- mild-moderate ability to adapt to home environment.

(AR at 447.)

ALJ Hansen found Dr. Gaudiot's opinion to be "partially persuasive to the extent they are consistent with and supported by the objective evidence." (AR at 23.) The ALJ determined that Dr. Gaudiot's findings relating to Plaintiff's ability to carry out complex instructions was sufficiently supported by the record, (AR at 23), and recognized Dr. Gaudiot's opinion that Plaintiff's "ability to concentrate and complete instructions was mild to moderately affected[,]"

(AR at 19). Dr. Gaudiot further noted that during the psychological evaluation, Plaintiff endorsed mood disassociation, insomnia, difficulty remembering facts, panic attacks, avoidance, detachment and estrangement from others." (AR at 19, 22.) However, Dr. Gaudiot's own observations and cognitive testing demonstrated that Plaintiff's attention and concentration were adequate and her memory was grossly intact. (AR at 19 (citing AR at 444) ("Attention/Concentration: Adequate to encounter, no distractibility noted; Recent and remote memory: Grossly intact.").) Further, Plaintiff was "pleasant and cooperative." (AR at 19 (citing AR at 444).)

Conversely, ALJ Hansen found little evidence to support Dr. Gaudiot's finding that Plaintiff was likely to have difficulty persisting at tasks. (AR at 23.) The ALJ relied upon Plaintiff's 28/29 MMSE score to support the conclusion that she had the capacity to persist in the performance of tasks. (AR at 23 (citing AR at 445).) The gravamen of Plaintiff's supportability and consistency argument lies here.

Plaintiff asserts ALJ Hansen's interpretation of the MMSE is flawed because "[it] appears" Dr. Gaudiot used the MMSE to determine Plaintiff's "cognitive ability to perform more than simple tasks . . . ." (Doc. 12 at 16.). Plaintiff further claims Dr. Gaudiot's findings were supported by his recitation of Plaintiff's "trauma and symptom history." (Doc. 12 at 16.) In particular, Dr. Gaudiot's opinion included the requisite objective medical evidence for trauma related disorders. Despite this, Plaintiff claims the ALJ's supportability analysis required Dr. Gaudiot to produce "more objective medical evidence" to support his opinion. (Doc. 12 at 16.) The Court finds this argument meritless. In support of her contentions Plaintiff repeatedly intimates that, taking her interpretation of Dr. Gaudiot's findings and report, he intended to use the MMSE to determine if

Plaintiff had the cognitive ability to perform more than simple tasks. (*See* Doc. 12 at 16 ("[The MMSE can be useful for determining whether the tested individual had the cognitive ability to perform more than simple tasks, and *that appears* to be how Dr. Gaudiot used it.") (emphasis added), (asserting "Dr. Gaudiot's opinion . . *at face value appears* to be adequately supported by his report.") (emphasis added). Dr. Gaudiot, however, does not state that is why he applied the MMSE. Further, Dr. Gaudiot opined that Plaintiff would have a moderate limitation in understanding and remembering complex tasks. ALJ Hansen took this into consideration in formulating the RFC. Specifically, she determined Plaintiff could "remember, understand, and carryout detailed *but not complex instructions*." (AR at 20) (emphasis added). Indeed, ALJ Hansen stated there was sufficient evidence in the record to support a finding that Plaintiff could not perform complex tasks. (AR at 23.)

Plaintiff further claims that ALJ Hansen did not sufficiently address supportability because she failed to consider Dr. Gaudiot's recitation of Plaintiff's trauma and symptom history. (Doc. 12 at 16.) This is simply not true. ALJ Hansen repeatedly cited to and listed Plaintiff's PTSD subjective symptoms throughout her opinion. For instance, ALJ Hansen recognized that Plaintiff "endorsed panic attacks, difficulty remembering facts, mood disassociation, avoidance, detachment and estrangement from others[,]" (AR at 22), as well as isolation when stressed as a result of her PTSD, (AR at 19). The ALJ also found that Plaintiff's "severe" PTSD affects "her ability to concentrate." (AR at 19.) Nevertheless, ALJ Hansen found Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of her mental impairments were "not entirely consistent with the medical evidence and other evidence in the record for the reasons" she explained in her decision. (AR at 21.) ALJ Hansen explained that she considered

Plaintiff's daily activities, her testimony at the administrative hearing, Dr. Gaudiot's own observations, and Plaintiff's treating medical providers' observations in the record. (*See* AR at 23.)

Plaintiff further posits that the ALJ did not identify what more objective evidence she expected Dr. Gaudiot to provide to support his report. (Doc. 12 at 16.) The Court has scoured ALJ Hansen's opinion and cannot find anywhere that she rejected any portion of Dr. Gaudiot's on this basis. Notwithstanding, Plaintiff cites *Schwarz v. Barnhart*, 70 Fed. Appx. 512, 518 (10th Cir. 2003) and *Hodge v. Berryhill*, 2017 U.S. Dist. LEXIS 126343 at *9 (D.N.M. Aug. 9, 2017), for the proposition that it is error for an ALJ to reject a consultative examiner's opinion for lack of psychological tests and clinical findings when the examiner used an "accepted technique" that "had an element of subjective testing." (Doc. 12 at 16-17.) The Court finds there is no basis for this contention as ALJ Hansen did not find Dr. Gaudiot's opinion lacked persuasiveness because he failed to apply particular or additional psychological tests. ALJ Hansen found Dr. Gaudiot's opinion only partially persuasive because his own observations and the testing contradicted his findings that Plaintiff's limitations were moderate to severe. (*See* AR at 19, 23) (citing AR at 444-45) (Plaintiff presented with "Attitude: Cooperative, appropriate mannerisms; Attention/Concentration: Adequate to encounter, no distractibility noted; Recent and remote memory.").) Likewise, other medical professionals noted Plaintiff was alert, oriented, and cooperative, and did not present with mental abnormalities to the extent Plaintiff alleges. (AR at 19, 23) (citing 397, 630).) Further, ALJ Hansen explained how and why Plaintiff's daily activities contradicted Plaintiff's subjective symptoms. (AR at 19, 23) (citing 37-39, 54, 255-58, 397, 630).) (finding Plaintiff's testimony, function reports, and the record demonstrated she managed her own finances, prepared meals, drove solo, cleaned her home, shopped at stores, attended social

gatherings like games with family, concerts, and church programs).)

Ultimately, the Court finds that the ALJ provided a coherent and adequate explanation for concluding that Dr. Gaudiot's opinion was partially persuasive. The ALJ applied the correct legal standard here and made a decision that was supported by substantial evidence in the record. The mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error on the part of ALJ Hansen. *Scrivner v. Berryhill*, 323 F.R.D. 663, 665–66 (D.N.M. January 11, 2018). The Court cannot reweigh the evidence or substitute its judgment for the ALJ's. *Lax*, 489 F.3d at 1084 ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' "but we will not reweigh the evidence or substitute our judgment for the Commissioner's."); *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 U.S. App. LEXIS 35585, 2022 WL 17883809, at *4 (10th Cir. Dec. 23, 2022) (affirming ALJ's finding that a doctor's opinion regarding marked mental limitations was not persuasive because it was not consistent with the claimant's other normal mental status exams and was not supported by the doctor's mental status examination findings). The Court will therefore deny Plaintiff's Motion on this final ground.

## V. CONCLUSION

Plaintiff has failed to convince this Court that the Commissioner's final decision to deny her Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, was tainted by legal error or unsupported by substantial evidence. Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff's Motion (Doc. 12), is **DENIED** and the decision of the Commissioner is **AFFIRMED**. A final judgment under Rule 58 will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED** this 30th day of September, 2026.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE